By the Court.—Sedgwick, Ch. J.
In the case for the plaintiffs, the following facts appeared : The plaintiffs and defendants were wholesale dealers in sardines among other goods. They entered into a written agreement, by which the former were to sell and the latter to buy, 400 cases of “domestic sardines,” the boxes in the cases to have “fancy labels ” upon them. Domestic sardines were fish taken and packed in Maine, and “ fancy labels ” were decorated labels in a French style. The plaintiffs knew that these labels would contain a statement in substance that the contents of the box had been packed in France in olive oil by persons named on the label. One of the plaintiffs testified that imported sardines come mostly from France, and are worth in the market about 50 per cent, more than domestic sardines, an account of the quality and the duty. The goods tendered by the plaintiffs under the agreement, had upon them labels like those that have been described, and names that were apparently names of French packers, doing business in France, such as Pillour Freres, Concameau, Finistere. It did not appear that that there were any persons of that name.
These were not in the market and never had been, and the contract could not have been carried out with domestic sardines that had upon the boxes, labels that were substantially different from those that were upon the boxes tendered. From this and other facts the plaintiff claimed that the defendant knew, when the agreement was made, that it intended goods of the kind that were tendered. It is then to be inferred that the plaintiff understood that defendant had the knowledge referred to.
On the facts it is an irresistible inference that the defendant entered into the agreement, to the knowledge of plaintiff, with the purpose of selling the goods to others in the condition provided by the agreement.
The defendant denied that the agreement was illegal and could not be enforced, because the object of making the contract was that goods should be delivered, in a con *44 dition, which in the usual course of trade would be used as a means of dishonest practice upon consumers.
It must be kept in mind that on the facts of the particular case, the effect of the evidence is, that although wholesale dealers might not or probably would not be deceived by the labels as to the contents of the boxes, it must be inferred that the labels were used for some purpose, either as to dealers or consumers, and that purpose must have regarded consumers, as the dealers would not be deceived. The dealers would knowingly sell to the consumers who would be without knowledge. In fact the trade appears to be a large one in which these deceptive labels alone are used. If nobody is to be deceived, why not put on the boxes the truth ?
Consumers may not be wronged by eating American sardines, while they think they are eating French sardines. One may be as wholesome and savory as the other, but undoubtedly the labels are not used to instil this information into the minds of the eaters. They are used to get a higher price than would be given if the label told the fact as to the origin of the fish. The plaintiffs’ testimony disclosed that a firm, packing .American sardines, tendered a large quantity to a merchant in the trade, with the names of American packers on the label, but they were refused, the merchant declining to take any goods with labels with English names. This would not have happened if consumers would buy the goods at-the same price under either kind of label.
The illegality which invalidates a contract is not necessarily such as tends to a violation of law, which inflicts a penalty. For instance, contracts which tend directly to immorality, like sales of goods to a prostitute for the purpose of enabling her to carry on her business of prostitution, contracts in restraint of trade or marriage, marriage brokage contracts, a contract of two persons not to bid against each at auction under certain circumstances, are void. A more pertinent case in point of. circumstance is that an agreement made to defraud a creditor of one party to it, cannot *45 be enforced. It might, however, be a serious question, whether the statute against obtaining goods by false pretenses would not embrace a case of knowingly selling goods under a fictitious label, that contained statements as to the goods.
In Tracy v. Talmage (14 N. Y. 162), the court of appeals determined that the bare knowledge by a vendor that the purchaser intends to make an unlawful use of the article sold, will not prevent a recovery for the purchase money. This is held, however, with the provisos, “ that the vendor has done nothing in aid or furtherance of the unlawful design, and also that it is not made a part of the contract that the goods be used for an unlawful purpose. It is quite evident from the opinions in that case, that the court did not mean that the terms of the contract of sale expressly refer to an unlawful object. The reasoning on the subject would support the proposition that the contract would be invalid if it were made with the intent that it should be used in or for some unlawful object.
. In the present case, the plaintiffs did not originally make the deceptive labels, but they knowingly procured them and in fact, furnished them, after binding themselves by contract so to do, and that was something that was in furtherance of an unlawful purpose of furnishing goods for customers in the market, in a state which was calculated to deceive those customers. In Tracy v. Talmage, the case was of a bare contract of sale, honest and lawful so far as its terms were considered, and which had nothing in itself, which provided for a train of circumstances, likely to end in an unlawful transaction. Here part of the contract, when the symbols expressed in it are turned into language, was that the goods should be furnished to the defendants ready for market, with a false representation as to their kind, that would be likely to deceive. For this reason it seems to me that it was part of the contract, that an unlawful object was intended and part of the common purpose, that the contract and the thing done under it should be used to promote an unlawful purpose.
*46 If Rudderow v. Huntington (3 Sanf. 252), would call for other views, I would be bound to follow the higher authority of Tracy v. Talmage, thinking as I do, that the rules that have been applied are established by the latter case. An examination of the case of Rudderow v. Huntington, shows that it did not profess to touch a case where the contract was made with a wrongful purpose on the part of the vendor, as a part of a scheme likely to injure or deceive third persons.
I do not think there was evidence to show that it was the understanding that the defendants were to sell to consumers, but the usual result and foreseen consequence would be that the goods would be presented to consumers, by means of such sales as they should make.
My opinion is that the judgment should be affirmed with costs.
O’Gorman, J., concurred.